UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LEON RICHARDSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>HRHH GAMING SENIOR MEZZ, LLC, a )<br>Delaware Limited Liability Company; )<br>BENNIE MANCINO, an individual, )<br>)<br>Defendants. )<br>) | Case No.: 2:13-cv-1913-GMN-CWH<br><br>**ORDER** |

Pending before the Court is Defendant Bennie Mancino's Motion to Dismiss, (ECF No. 32), Plaintiff Leon Richardson's Opposition to the Motion to Dismiss, (ECF No. 36), and Defendant Mancino's Reply, (ECF No. 38). For the reasons set forth below, the Motion to Dismiss is **DENIED**.

I. **BACKGROUND**

This case concerns allegations of racial discrimination and other racially-motivated misconduct that occurred during the culmination of Plaintiff's employment with Defendant HRHH Gaming Senior Mezz, LLC ("HRHH"). Plaintiff's employment with Defendant HRHH began in 2005, (First Am. Compl. ¶ 5, ECF No. 31), and continued until March 2012. (*Id.* at ¶ 12). At that time, another HRHH employee, Defendant Mancino, informed Plaintiff that his employment was being suspended pending an investigation into a suspected company policy violation. (*Id.*). Despite Plaintiff's contentions that no policy violation occurred and that the policy Defendant Mancino accused him of violating did not even actually exist, (*Id.* at ¶¶ 12-13), Defendant HRHH terminated Plaintiff's employment "on or about April 1, 2012,"[1] (*Id.* At

---

[1] Later in the FAC, Plaintiff lists April 3, 2012 as the date of termination. (FAC ¶¶ 54-55).

¶¶ 5, 9).

On October 18, 2013, Plaintiff—proceeding *pro se*—filed his original Complaint in this Court. (ECF No. 1). The original Complaint contained a Title VII racial discrimination claim, a wrongful discharge claim, and a punitive damages claim against Defendants HRHH and Mancino. (Compl. ¶¶ 16-32, ECF. No. 1). Defendant Mancino moved to dismiss all three claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6), (ECF No. 8), and after a hearing, the Court granted the motion, (Minutes of Proceedings, ECF No. 28). The Court dismissed the punitive damages claim with prejudice, but dismissed the remaining two claims—Title VII racial discrimination and wrongful termination—without prejudice. (*Id.*). Plaintiff then filed his First Amended Complaint ("FAC") on August 20, 2014, asserting claims of defamation and intentional interference with prospective economic advantage against Defendant Mancino. (FAC ¶¶ 53-73). Defendant Mancino now moves to dismiss these claims under Fed. R. Civ. P. 12(b)(6). (ECF No. 32).

## II.  LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This

standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Nevertheless, the Supreme Court has instructed "federal courts to liberally construe the 'inartful pleading' of pro se litigants." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

## III.  ANALYSIS

According to Defendant Mancino, Plaintiff's defamation claim is barred by Nevada's two-year statute of limitations and therefore fails to state a claim upon which relief may be granted. (Mot. to Dism. 4:16-18).  Plaintiff does not dispute that the statute of limitations has run, but instead argues that the defamation claim survives because it relates back to October 18, 2013—the date the original Complaint was filed. (Opp. 11:14-16).

Additionally, Defendant Mancino argues that the intentional interference with prospective economic advantage ("IIPEA") claim[2] should be dismissed because it "suffers from the fatal defect of missing a third party to interfere with [Plaintiff's] employment relationship." (Reply 7:6-7).  He further argues that dismissal is warranted because the allegations underlying the IIPEA claim do not involve a "strong public policy," which is necessary to overcome Nevada's at-will employment rule. (Mot. to Dism. 8:7-9).  Plaintiff refutes both arguments, stating that Defendant Mancino is a third party to the employment relationship between Plaintiff and HRHH, (Opp. 14:27-28), and that Defendant Mancino's public policy argument is inapposite because the IIEPA claim was brought against Defendant Mancino in his individual capacity. (*Id.* at 16:21-24).  Plaintiff alternatively contends that Nevada's public policy against defamation is strong enough to constitute an actionable interference with prospective economic advantage in the at-will employment context. (*Id.* at 16:3-21).

### A.  Defamation

Under Federal Rule of Civil Procedure 15(c)(1)(B), a claim initially set forth in an

---

[2] The Court is not persuaded by Defendant Mancino's additional argument that the IIEPA claim should be dismissed because it is somehow duplicative of Plaintiff's defamation claim. (Mot. to Dism. 8:23-25); (Reply 8:4-5).  Defendant Mancino offers no legal authority in support of this argument, and the Court agrees with Plaintiff's statement that "the Defendant should not be permitted to decide which theory [of recovery] the Plaintiff pursues." (Opp. 17:2-9) (citing Fed. R. Civ. P. 8).

amended complaint relates back to the date of a prior filing if the claim "ar[ises] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." A claim "arises out of the same conduct, transaction, or occurrence if it will likely be proved by the same kind of evidence offered in support of the original pleading." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (internal quotations omitted). Additionally, both the original complaint and the amended complaint must share "a common core of operative facts" in order to afford the defendant "fair notice of the transaction, occurrence, or conduct called into question." *Id.* (quoting *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989)). Yet, in the Ninth Circuit, the relation back doctrine is to be "liberally applied." *Id.* (quoting *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1259 n. 29 (9th Cir. 1982)). As explained below, the Court finds that the defamation claim relates back to the date the original Complaint was filed.

### 1. Common Core of Operative Facts

According to Defendant Mancino, the defamation claim does not relate back because the original Complaint failed to put him on notice "that Plaintiff was either pursuing or attempting to pursue a claim of defamation against him." (Mot. to Dism. 6:20-22). However, whether a defendant has fair notice of the transaction, occurrence, or conduct being called into question depends only on the commonality of the facts alleged in the initial and amended pleadings. *ASARCO, LLC*, 765 F.3d at 1004; *see also Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 737 (9th Cir. 1982) ("[A]n amendment which changes the legal theory on which an action initially was brought is of no consequence to the question of relation back if the factual situation out of which the action arises remains the same and has been brought to the defendant's attention by the original pleading." (internal citations omitted)).

In *Santana*, a hotel manager told the plaintiff's employer that the plaintiff had made inappropriate sexual advances toward hotel employees during his stay. 686 F.2d at 737. The

plaintiff's employment was terminated as a result, and in his original complaint, he asserted a claim against the hotel for slander. *Id.*  The Ninth Circuit allowed the plaintiff to amend his complaint to include an interference with employment relations claim even though the statute of limitations had run, because the original pleading provided the defendant with "notice of the factual basis of Santana's claim for interference with employment relations." *Id.* at 739.  The *Santana* Court based its conclusion on a particular portion of the complaint, which stated:  "[a]s a direct and proximate result of the actions of the defendants, plaintiff was terminated from his position of employment at Hughes Air West from the period of May 1, 1978 through June 29, 1979 and received no compensation for this period, in excess of one year." *Id.*

In contrast, in *Percy v. San Francisco General Hospital*, the plaintiff brought a post-termination Title VII claim against his former employer, the city of San Francisco. 841 F.2d 975, 976-77 (9th 1988).  The plaintiff later attempted to amend his complaint to include a § 1983 claim, which alleged due process violations stemming from a confirmatory termination hearing held by the city's Civil Service Commission. *Id.* at 977.  The Ninth Circuit affirmed the trial court's conclusion that the § 1983 claim did not relate back because it "arose out of a set of facts distinct from those supporting his Title VII claim." *Id.* at 979.  It explained, "Percy's original complaint alleged only facts having to do with his claim of racial discrimination in his termination by the Hospital.  Nowhere in the complaint did Percy suggest there were defects in the Civil Service Commission proceedings." *Id.*

In this case, the allegations in the original Complaint raise an inference that Defendant Mancino defamed[3] Plaintiff.  In the original Complaint, Plaintiff alleged that: Defendant Mancino called Plaintiff into his office "regarding an incident that occurred on March 26, 2012,"

---

[3] To succeed on a defamation claim in Nevada, a plaintiff must prove: "(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1148 (9th Cir. 2012) (quoting *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005)).

(Compl. ¶ 4); Defendant Mancino informed Plaintiff that, pending an investigation, Plaintiff was being suspended, (*Id.*); Defendant Mancino falsely accused Plaintiff of violating a company policy, (*Id.*); and Defendant Mancino and Defendant HRHH wrongfully terminated Plaintiff for a fictitious policy violation, (*Id.* at ¶ 25). Plaintiff also alleged in the original Complaint that "Defendant HARD ROCK [sic] expressly authorized the termination of Plaintiff based upon the decision of BERNIE [sic] MANCINO." (*Id.* at ¶ 30).

Taking these allegations as true and construing them liberally in Plaintiff's favor, they reflect the same core of operative facts underlying the defamation claim in the FAC. *See* (FAC ¶¶ 12-14, 18-19). Thus, the original Complaint sufficiently "put Defendant Mancino on notice that he is alleged to have made false statements of fact concerning the Plaintiff to persons having the authority to terminate the Plaintiff's employment."[4] (Opp. 11:28–12:3).

### 2. Same Kind of Evidence

Defendant Mancino further contends that "new evidence and witnesses will be needed to support" the defamation claim, and therefore the claim does not arise out of the same conduct, occurrence, or transaction set forth in the original Complaint. (Reply 4:27–5:2). In support of this argument, Defendant Mancino points out that, "[F]or the first time, the First Amended Complaint lists David Munoz as the party to which the alleged false and defamatory statement was published along with other unnamed managers." (*Id.* at 5:2-4). The allegation in the original Complaint that "Defendant HARD ROCK [sic] expressly authorized the termination of Plaintiff based upon the decision of BERNIE [sic] MANCINO," indicates that some of HRHH's employees would be called to testify regarding Defendant Mancino's role in Plaintiff's termination. (Compl. ¶ 30). The fact that the FAC is more specific as to which of HRHH's

---

[4] It is of no consequence that the original Complaint is allegedly "missing facts necessary to plead the new defamation theory." (Reply 4:22-23). The relation back inquiry focuses on "the conduct, transaction, or occurrence set or—*or attempted to be set out*—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B) (emphasis added); *see also Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 840 F.2d 730, 736 (9th Cir. 1988) ("Under Rule 15, the only question is whether the later claims arise out of the conduct, transaction, or occurrence brought to the defendant's attention by the initial claim.").

managers heard the allegedly defamatory statements does not lead to the conclusion that a different kind of evidence will be required to prove the defamation claim.  Moreover, comparing the original Complaint's reference to a "Pit Manager," (*Id.* at ¶ 6), to the FAC's reference to "Pit Manager David Munoz," (FAC ¶ 13), reveals that David Munoz is likely the same individual described in the original Complaint, and therefore he presumably would have been called as a witness based on the original allegations.

Because the defamation claim will likely be proved by the same kind of evidence that would be offered in support of the allegations in the original Complaint, and because the defamation claim shares a common core of operative facts with the claims set forth in the original Complaint, the Court finds that the defamation claim arises out of conduct, transactions, or occurrences set out in the original Complaint.

> So long as a party is notified of litigation concerning a particular transaction or occurrence, that party has been given all the notice that Rule 15(c) requires. When a defendant is so notified, 'the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement.'

*ASARCO, LLC*, 765 F.3d at 1006 (quoting *Martell*, 872 F.2d at 326).  The defamation claim relates back to the date the original Complaint was filed and is therefore not barred by the statute of limitations.  Accordingly, Defendant Mancino's Motion to Dismiss will be denied as to the defamation claim.

**B.    Intentional Interference with Prospective Economic Advantage**

Defendant Mancino also moves to dismiss Plaintiff's intentional interference with prospective economic advantage claim.  In Nevada, to succeed on an IIEPA claim, a plaintiff must prove:

> (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct.

*In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011) (quoting *Wichinsky v. Mosa*, 847 P.2d 727, 729-30 (Nev. 1993)).

The District of Nevada has previously found a prospective contractual relationship to exist between an employer and an at-will employee.[5] *See, e.g.*, *Cummings v. United Healthcare Servs., Inc.*, No. 2:13-CV-00479-APG-GWF, 2014 WL 1302029, at *8 (D. Nev. Mar. 31, 2014); *Lauster v. Grand Sierra Resort Corp.*, No. 3:10–CV–00305–RCJ–RAM, 2010 WL 5477766, at *2 (D. Nev. Dec. 29, 2010). The District of Nevada has also held, however, that an entity cannot tortiously interfere with a contract to which it is a party. *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005) (citing *Bartsas Realty, Inc. v. Nash*, 402 P.2d 650, 651 (Nev. 1965)), *aff'd*, 220 Fed. Appx. 697 (9th Cir. 2007). Because agents of an employer acting within the scope of their employment are parties to the employer's contracts, they are not appropriate parties against which IIEPA claims may lie. *Welder v. University of S. Nev.*, 833 F. Supp. 2d 1240, 1244 (D. Nev. 2011); *Lauster*, 2010 WL 5477766, at *6.

In *Lauster*, an IIEPA claim brought against a number of defendants including the plaintiff's former employer and its president was dismissed by the district court judge. 2010 WL 5477766, at *1. Noting that the Nevada Supreme Court had yet to determine if a IIEPA claim in the at-will employment context was viable, the district court judge in *Lauster* decided that "an at-will employee may sue a third party who interferes with his employment relationship, because that person has tortiously interfered with his prospective economic advantage. However, the nature of the interference must implicate the 'strong public policy' of the state." *Id.* at *4. Defendant Mancino interprets this holding to support his argument that Plaintiff's IIEPA claim should be dismissed because he is not a third party to the employment relationship, and defamation does not implicate the strong public policy of the state. (Mot. to Dism. 8:7-28); (Reply 5:14-17, 6:18–7:10).

---

[5] Both parties seem to agree that Plaintiff's employment was at will. (Mot. to Dismiss 7:1–8:28); (Opp. 14:14-28).

However, in analogizing *Lauster* to the instant case, Defendant Mancino fails to consider that the *Lauster* plaintiff only "implie[d] that [the defendants] were acting as agents of the employer" and "allege[d] no facts concerning how any [d]efendant wrongfully influenced [the employer] in a private capacity to terminate Plaintiff." *Lauster*, 2010 WL 5477766, at *6. The inverse is true of the allegations in the instant FAC.

Plaintiff has alleged facts—"Defendant Mancino's acts were done with malice, oppression, fraud (express or implied), and/or willful intent to injure the Plaintiff," (FAC ¶ 73,)—that, when taken as true, are sufficient to support a plausible inference that Defendant Mancino acted outside the scope of his employment and not as an agent of Defendant HRHH.[6] *See, e.g.*, *Cummings*, 2014 WL 1302029, at *9. These facts are also sufficient to convert Defendant Mancino into a third party to the employment relationship, against which a claim for IIEPA may lie. Because the IIEPA claim is brought against Defendant Mancino in his individual capacity, it is not necessary for the Court to decide whether defamation implicates the strong public policy of the state such that the Nevada Supreme Court would recognize it as an exception to the at-will employment doctrine. All the elements of IIEPA are adequately pled in the First Amended Complaint, and Defendant Mancino's Motion to Dismiss will be denied as to the IIEPA claim.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Mancino's Motion to Dismiss, (ECF No. 32), is **DENIED**.

**DATED** this 10th day of March, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

---

[6] Even though Plaintiff concedes that it is unresolved whether Defendant Mancino acted in a supervisory capacity and thus as an agent of Defendant HRHH, (Opp., 15:17–16:2), the issue is sufficiently pled and need not be resolved at this time.