# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |  |
|---|---|---|
| LEON RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:13-cv-1913-GMN-CWH |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| HRHH GAMING SENIOR MEZZ, LLC, a | ) | |
| Delaware Limited Liability Company; | ) | |
| BENNIE MANCINO, an individual, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Presently before the Court are Defendant HRHH Gaming Senior Mezz, LLC's ("HRHH") Motion to Dismiss, (ECF No. 33), Plaintiff Leon Richardson's Opposition to the Motion to Dismiss, (ECF No. 37), and Defendant HRHH's Reply. (ECF No. 39)  For the reasons set forth below, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

 This case concerns allegations of racial discrimination and other racially motivated misconduct that occurred during the culmination of Plaintiff's employment with Defendant HRHH.  Plaintiff's employment with Defendant HRHH began in 2005, (First Am. Compl. ¶ 5, ECF No. 31), and continued until March 2012. (*Id.* at ¶ 12)  At that time, another HRHH employee—Defendant Bennie Mancino—informed Plaintiff that his employment was being suspended pending an investigation into a suspected policy violation. (*Id.*)  Despite Plaintiff's contentions that no policy violation occurred and that the company policy Defendant Mancino accused him of violating did not even actually exist, (*Id.* at ¶¶ 12-13), Defendant HRHH

terminated Plaintiff's employment "on or about April 1, 2012."[1] (*Id.* at ¶¶ 5, 9).

On October 18, 2013, Plaintiff—proceeding *pro se*—filed his original Complaint in this Court. (ECF No. 1).  The original Complaint contained a Title VII racial discrimination claim, a wrongful discharge claim, and a punitive damages claim against Defendants HRHH and Mancino. (Compl. ¶¶ 16-27, ECF. No. 1).  Defendant HRHH moved to dismiss the punitive damages and wrongful termination claims, (ECF No. 11), and after a hearing, the Court dismissed the punitive damages claim with prejudice and the wrongful discharge claim without prejudice. (Minutes of Proceedings, ECF No. 28).  Plaintiff then filed a First Amended Complaint ("FAC") on August 20, 2014, which contained six causes of action against Defendant HRHH: (1) race and color discrimination under Title VII and Nev. Rev. Stat. Chapter 613; (2) a civil rights violation of 42 U.S.C. § 1981; (3) racial harassment under 42 U.S.C. § 1981; (4) defamation; (5) negligent hiring, training and supervision; and (6) racial harassment under 42 U.S.C. § 2000e-2.[2] (*Id.* at ¶¶ 25-65, 74-86).

Defendant HRHH now moves under Fed. R. Civ. P. 12(b) to dismiss both tort claims in the FAC, as well as the racial harassment claim, the color discrimination claim arising under Title VII, and the claim arising under Nev. Rev. Stat. Chapter 613. (ECF No. 33).

## II.   **LEGAL STANDARD**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule

---

[1] Later, April 3, 2012, is stated as the date of termination. (FAC ¶¶ 54-55); (Mot. to Dism. Ex. 1-2).

[2] This claim was incorrectly labeled as a 42 U.S.C. § 2000e-3 claim in the First Amended Complaint. (FAC ¶ 86).

12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Nevertheless, the Supreme Court has instructed "federal courts to liberally construe the 'inartful pleading' of *pro se* litigants." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (quoting *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)).

## III.   **ANALYSIS**

According to Defendant HRHH, Plaintiff's first cause of action, which includes multiple discrimination claims, should be partially dismissed and "limited to race discrimination under Title VII." (Mot. to Dism. 3:2, ECF No. 33). Specifically, Defendant HRHH argues that the Court should dismiss the Nev. Rev. Stat. Chapter 613 discrimination claim as untimely, (*Id.* at 10:3-12:21), and that the color discrimination claim and the 42 U.S.C. § 2000e-2 racial harassment claim should be dismissed because Plaintiff failed to exhaust his administrative remedies. (*Id.* at 7:21-8-5, 18:14-19:12). Defendant HRHH also argues that Plaintiff's defamation and negligent hiring, training, and supervision ("NHTS") claims should be dismissed, asserting that these claims are barred by Nevada's two-year statute of limitations and do not relate back to the date the original Complaint was filed.[3] (*Id.* at 12:22-15:20). Defendant

---

[3] Defendant HRHH additionally argues that the defamation and NHTS claims should be dismissed because facts necessary for a sufficient pleading of those claims are missing from the original Complaint. (Reply 10:3-5). However, the relation back inquiry focuses on "the conduct, transaction, or occurrence set or—*or attempted to be set out*—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B) (emphasis added); *see also Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 840 F.2d 730, 736 (9th Cir. 1988) ("Under Rule 15, the only question is whether the later claims arise out of the conduct, transaction, or occurrence brought to the defendant's attention by the initial claim.").

HRHH advances a number of alternative arguments as to why the defamation and NHTS claims should be dismissed, and the Court will address each in turn.

### A.   State Law Discrimination Claim

A discrimination claim authorized by Chapter 613 of the Nevada Revised Statutes may not be "brought more than 180 days after the date of the act complained of." Nev. Rev. Stat. § 613.430.  However, "[w]hen a complaint is filed with the Nevada Equal Rights Commission the limitation provided by this section is tolled . . . during the pendency of the complaint before the Commission." *Id.*  Plaintiff filed his Complaint on October 18, 2013—563 days after April 3, 2012, the latest date his charge indicates that the discrimination occurred. (Mot. to Dism. Ex. 1).  Even excluding the 347 days Plaintiff's charge was pending before the Nevada Equal Rights Commission ("NERC"),[4] Plaintiff still had 216 days to file his state law discrimination claims with this Court; therefore these claims are untimely under Nev. Rev. Stat. § 613.430.

Plaintiff urges the Court to apply the doctrine of equitable tolling to excuse the claims' untimeliness. (Opp. 23:22-24: 15, ECF No. 37).  Factors courts consider in determining whether to apply the doctrine of equitable tolling to Chapter 613 claims include:

> the diligence of the claimant; the claimant's knowledge of the relevant facts; the claimant's reliance on authoritative statements by the administrative agency that misled the claimant about the nature of the claimant's rights; any deception or false assurances on the part of the employer against whom the claim is made; the prejudice to the employer that would actually result from delay during the time that the limitations period is tolled; and any other equitable considerations appropriate in the particular case.

*Copeland v. Desert Inn Hotel*, 673 P.2d 490, 492 (Nev. 1983).

/ / /

---

[4] Plaintiff's EEOC charge was not filed until September 18, 2012. (Mot. to Dism. Ex. 1-2). However, in that charge, he alleges that he filed a complaint with NERC as early as August 2, 2012. (*Id.*).  The Court's calculations, therefore, use the earlier date—August 2, 2012—which results in a longer tolling period.

1    Plaintiff has failed to allege facts sufficient to justify the application of equitable tolling

2    in this case.  Plaintiff argues that he "may have" relied on misleading agency statements and

3    conditional language in EEOC documents, (*Id.* at 25:6-11), and that he would have had to bring

4    two separate actions to preserve his state law claims while his federal claim was pending with

5    the EEOC. (*Id.* at 25:3-6).  Plaintiff further adds that there were "ZERO days available in which

6    he could have filed suit on both his state and federal claims at the same time" because of the

7    differences in EEOC and NERC processing times. (*Id.* at 25:12-15).

8         The practical obstacles Plaintiff identifies are a direct result of his own delay and plainly

9    contradict his assertions of diligence, as he did not file his formal EEOC charge until 168 of his

10   allotted 180 days had passed. *See* (Mot. to Dism. Ex. 1-2) (reflecting that Plaintiff's EEOC

11   charge was filed on September 18, 2012.  Moreover, as Plaintiff has made only vague,

12   conclusory assertions that he was misled as to the relevant timeline, the Court will not apply the

13   doctrine of equitable tolling to Plaintiff's state law discrimination claims.  Accordingly, the

14   Court finds that the state law discrimination claims are barred by the statute of limitations and

15   will therefore be dismissed.

16        **B.    Color Discrimination and Racial Harassment Claims**

17        As Defendant HRHH indicates, a plaintiff must exhaust administrative remedies by

18   filing a charge with the EEOC or an appropriate state agency before a federal district court can

19   exercise subject-matter jurisdiction over a Title VII discrimination claim. *Lyons v. England*,

20   307 F.3d 1092, 1103 (9th Cir. 2002).  Because Plaintiff indicated in his EEOC charge that he

21   was discriminated against solely because of his "race," Defendant HRHH requests that

22   Plaintiff's Title VII color discrimination claim be dismissed for failure to exhaust

23   administrative remedies. (Mot. to Dism. 8:1-10:1); (Reply 3:7-10).  Defendant HRHH also

24   requests that Plaintiff's racial harassment claim be dismissed for failure to exhaust

25   administrative remedies because Plaintiff's EEOC charge focuses solely on Plaintiff's

termination, (Mot. to Dism. 18:14-19:12), and "does not assert any allegations of harassment or discriminatory failure to promote." (Reply 16:3-4). Plaintiff maintains that he has exhausted his administrative remedies for the color discrimination and racial harassment claims because both claims are "like or reasonably related to" his EEOC charge. (Opp. 22:17-21; 27:5-8).

### 1. "Like or Reasonably Related" Standard

A district court's subject-matter jurisdiction over a Title VII discrimination claim "depends upon the scope of both the EEOC charge and the EEOC investigation." *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (internal quotations and citations omitted); *see also Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (stating that subject-matter jurisdiction may extend beyond the EEOC's actual investigation to an "EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.") (internal citations omitted). "Allegations of discrimination not included in the administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (internal quotations omitted).

To determine whether a claim is "like or reasonably related to" allegations contained in an EEOC charge, several factors are relevant: "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *B.K.B.*, 276 F.3d at 1100. Also relevant is the extent to which a claim is "consistent with the plaintiff's original theory of the case." *Id.* (citing *Farmer Bros.*, 31 F.3d at 899). Because EEOC charges are "made by those unschooled in the technicalities of formal pleading," they are to be interpreted with the "utmost liberality." *Id.* (internal quotations omitted). However, there is "a limit to such judicial tolerance when principles of notice and fair play are involved." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002). The Court will assess

Plaintiff's color discrimination claim and racial harassment claim separately, pursuant to this standard.

### 2. Color Discrimination

The Ninth Circuit has yet to consider whether a claim of color discrimination is sufficiently like or reasonably related to an EEOC charge of race discrimination to create subject-matter jurisdiction. However, the Court finds *Cooper v. Jackson-Madison Co. Gen. Hosp. Dist.*, 742 F. Supp. 2d 941 (W.D. Tenn. 2010), to be highly persuasive in regard to this question. Like Plaintiff did here, the *Cooper* plaintiff brought claims in federal court against his employer for both race and color discrimination. *Cooper*, 742 F. Supp. 2d at 945. Also like Plaintiff did here, the *Cooper* plaintiff checked the box for race discrimination on his EEOC charge, but left the box for color discrimination blank. *Id.* at 949; (Mot. to Dism. Ex. 1). Moreover, the EEOC charge in this case and that in *Cooper* contained strikingly similar language describing the alleged discriminatory acts. *See* (Mot. to Dism. Ex. 1) ("Respondent discriminated against me because of my race, Black."); *Cooper*, 742 F. Supp. 2d at 945 ("Plaintiff alleged that he 'was discriminated against…because of [his] race, White.").

The *Cooper* court, relying in part on an EEOC compliance manual, explained the difference between race and color discrimination, stating that color discrimination "arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African–American individual is discriminated against in favor of a light-colored African-American individual." *Cooper*, 742 F. Supp. 2d at 950-51. As the "thrust" of the *Cooper* plaintiff's EEOC charge was that he was discriminated against "because of his Caucasian race," and the allegations in his charge "[did] not suggest that he was discriminated against because he was, for example, a fair-skinned Caucasian," the court found that the plaintiff had only exhausted his administrative remedies as to the race discrimination claim, but not as to the color discrimination claim. *Id.*

Plaintiff's EEOC charge here is similarly devoid of allegations of discrimination based on his skin tone, and like the *Cooper* plaintiff, the basis of Plaintiff's EEOC charge was that he was discriminated against because of his race. *See* (Mot. to Dism. Ex.1-2). Because Plaintiff's EEOC charge contains no allegations that that would allow the EEOC to infer and investigate a claim of color discrimination, Plaintiff's color discrimination claim is not like or reasonably related to his EEOC charge. Plaintiff, therefore, has failed to exhaust his administrative remedies as to the color discrimination claim, and the Court lacks subject-matter jurisdiction over the claim. Accordingly, the color discrimination claim will be dismissed. [5]

### 3.   Racial Harassment

Defendant HRHH contends that Plaintiff's racial harassment claim is not reasonably related to his EEOC discrimination charge because the charge focuses specifically on Plaintiff's termination, (Mot. to Dism. 19:6-7), as illustrated by the fact that Plaintiff noted the date of his termination as the earliest *and* latest date the alleged discrimination occurred. (Reply 17:12-13). Racial harassment occurs when a plaintiff is subject to unwelcome verbal or physical conduct based on race that is "sufficiently severe or pervasive to alter the conditions of [his or her] employment and create an abusive work environment." *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005) (quoting *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

Here, Plaintiff does not allege any alterations in his working environment or conditions of employment caused by unwelcome verbal or physical conduct. Instead, in his EEOC charge, Plaintiff alleges that he was wrongfully discharged on April 3, 2012, after he was accused of violating a company policy and that "a White male committed the same infraction, but he was not discharged." (Mot. to Dism. at Ex. 1).

---

[5] To the extent Plaintiff is claiming he was also discriminated against on the basis of national origin, (FAC ¶ 27), that claim is also not reasonably related to Plaintiff's EEOC charge.

From these allegations, it is clear that discriminatory discharge—not racial harassment— was Plaintiff's original theory of the case.  Moreover, Plaintiff indicated in his charge that the discrimination occurred only on the date of his termination, and he did not check the available box to indicate that the discrimination was ongoing. (*Id.*); *see Turner v. Department of Educ. Hawaii*, 855 F. Supp. 2d 1155, 1171 (D. Haw. 2012) (finding that where the plaintiff listed the date of his termination as the sole date the discrimination occurred and did not check the "continuing violation" box, the plaintiff did not exhaust his administrative remedies as to his harassment claim).  A reasonable EEOC investigation therefore would not have focused on anything outside of Plaintiff's termination. *See Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002) (holding that where a plaintiff's EEOC charge only alleged discrimination within the context of a school faculty election, "[a] reasonable EEOC investigation of that charge would not have focused on anything beyond [that event].").

Because Plaintiff's EEOC charge contains allegations of discrimination occurring only within the context of his termination, and because Plaintiff failed to allege any facts that would allow the EEOC to infer and investigate changes in his terms and conditions of employment or working environment caused by verbal or physical conduct based on race, Plaintiff's racial harassment claim is not like or reasonably related to his EEOC charge.[6]  Plaintiff has failed to exhaust his administrative remedies as to the racial harassment claim, and as a result, the Court lacks subject-matter jurisdiction over the claim.  Accordingly, the Plaintiff's racial harassment claim will be dismissed.

## B.  Defamation and Negligent Hiring, Training, and Supervision Claims

According to Defendant HRHH, Plaintiff's defamation and NHTS claims should be

---

[6] Plaintiff also argues that "Ninth Circuit precedent suggests that the determination of whether or not a claim of Racial Harassment made in court is 'like or reasonably related to' the Race Discrimination in the Charge is not susceptible to an FRCP Rule 12(b)(6) dismissal." (Opp. 26:16-19).  However, per Fed. R. Civ. P. 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

dismissed because they are barred by Nev. Rev. Stat. § 11.190(4)(e)'s two-year statute of limitations. (Mot to Dism. 12:24-27).  Plaintiff does not dispute that the statute of limitations would have run by the time the FAC was filed, but instead argues that the claims should not be dismissed because they relate back to October 18, 2013—the date the original Complaint was filed. (Opp. 11:18-20, 14:12-24).  Defendant HRHH disagrees, arguing that: (1) "HRHH received no notice of Plaintiff's alleged tort claims because the factual basis for the claims were [sic] never alleged in the Original Complaint," (Mot. to Dism. 13:23-25); and (2) "new and additional evidence . . . will be needed" to prove the defamation and NHTS claims, (Reply 10:11-13).  Defendant HRHH alternatively asks the Court to dismiss the defamation claim because the claim is insufficiently pled under Fed. R. Civ. P. 8(a) and the standards set forth in *Iqbal* and *Twombly*. (*Id.* at 17:21-18:13); (Reply 14:7-15:27).  As to the NHTS claim, Defendant HRHH alternatively contends that it should be dismissed because it would not be recognized by the Nevada Supreme Court as pled in the FAC. (Mot. to Dism. 15:27-17:18).

### 1.   Relation Back

Under Fed. R. Civ. P. 15(c)(1)(B), a claim initially set forth in an amended complaint relates back to the date of a prior filing if the claim "ar[ises] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  A claim "arises out of the same conduct, transaction, or occurrence if it will likely be proved by the same kind of evidence offered in support of the original pleading." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (internal quotations omitted).  Additionally, to relate back, both the original complaint and the amended complaint must share "a common core of operative facts" in order to afford the defendant "fair notice of the transaction, occurrence, or conduct called into question." *Id.* (quoting *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989)).  In the Ninth Circuit, the relation back doctrine is nevertheless "liberally applied." *Id.* (quoting *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1259 n.29 (9th

Cir. 1982)).  As explained below, the Court finds that the defamation and NHTS claims relate back to the date the original Complaint was filed.

### a.   Common Core of Operative Facts

Whether a defendant has fair notice of the transaction, occurrence, or conduct being called into question depends on the commonality of the operative facts alleged in the initial and amended pleading.  *ASARCO, LLC*, 765 F.3d at 1004; *see also Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 737 (9th Cir. 1982) ("[A]n amendment which changes the legal theory on which an action initially was brought is of no consequence to the question of relation back if the factual situation out of which the action arises remains the same and has been brought to the defendant's attention by the original pleading." (internal citations omitted)).

For example, in *Santana*, a hotel manager told the plaintiff's employer that the plaintiff made inappropriate sexual advances toward hotel employees during his stay. 686 F.2d at 737. The plaintiff's employment was terminated as a result, and in his original complaint, he asserted a claim against the hotel for slander. *Id.*  The Ninth Circuit allowed the plaintiff to amend his complaint to include an interference with employment relations claim—even though the statute of limitations on that claim would have already run—because the original pleading provided Holiday Inns with "notice of the factual basis of Santana's claim for interference with employment relations." *Id.* at 739.  The court relied on a particular portion of the complaint, which stated:  "[a]s a direct and proximate result of the actions of the defendants, plaintiff was terminated from his position of employment at Hughes Air West from the period of May 1, 1978 through June 29, 1979 and received no compensation for this period, in excess of one year." *Id.*

In contrast, the plaintiff in *Percy v. San Francisco General Hospital*, 841 F.2d 975 (9th Cir. 1988), brought a post-termination Title VII claim against his former employer, the city of San Francisco.  The plaintiff later attempted to amend his complaint to include a § 1983 claim,

which alleged due process violations stemming from a confirmatory termination hearing held by the city's Civil Service Commission. *Id.* at 977.  The Ninth Circuit affirmed the trial court's conclusion that the § 1983 claim did not relate back because it "arose out of a set of facts distinct from those supporting his Title VII claim." *Id.* at 979.  The court explained: "Percy's original complaint alleged only facts having to do with his claim of racial discrimination in his termination by the Hospital.  Nowhere in the complaint did Percy suggest there were defects in the Civil Service Commission proceedings." *Id.*

Here, the facts in the original Complaint raise an inference that Defendant HRHH defamed Plaintiff and was negligent in its training and supervision of Defendant Mancino.  To succeed on a defamation claim in Nevada, a plaintiff must show:

> (1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1148 (9th Cir. 2012) (quoting *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005)).  In the original Complaint, Plaintiff pled: "Defendant [HRHH] allegedly terminated Plaintiff for 'not following company policy.'  Specifically, in his attempt to obtain employment benefits, Plaintiff was alleged to have violated Rule #6.  Rule #6 is not only vague, but was NOT included in the employee handbook provided to Plaintiff." (Compl. ¶ 13).  Plaintiff further alleges that "Defendants have wrongfully terminated [Plaintiff] for an alleged violation of 'Rule #6' that does not exist in his copy of the Handbook," and that the employee handbook "had been modified to allege violation of a non-existent Rule." (*Id.* at ¶ 25).  Taking these allegations as true and construing them liberally in Plaintiff's favor, they reflect the same core of operative facts underlying the defamation claim in the FAC. *See* (FAC ¶¶ 19, 53-65).  Defendant HRHH was thus on notice that it was alleged to have made a false and injurious statement that Plaintiff "violated Rule #6" to a third party—the unemployment

benefits office.

Defendant HRHH was likewise on notice that its training and supervision of Defendant Mancino was being called into question.  To succeed on a claim for NHTS in Nevada, a plaintiff must prove:

> (1) a general duty on the employer to use reasonable care in the training and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation.

*Okeke v. Biomat USA, Inc.*, 927 F.Supp.2d 1021, 1028 (D. Nev. 2013).  "Claims for negligent training and supervision are based upon the premise that an employer should be liable when it places an employee, who it knows or should have known behaves wrongfully, in a position in which the employee can harm someone else." *Id.*

In the original Complaint, Plaintiff pled: Defendant Mancino is an employee of Defendant HRHH, (Compl. ¶ 24); Defendant Mancino "has openly admitted he does not like black people," (*Id.* at ¶14); Defendant Mancino "has made it public knowledge of his dislike of black people," (*Id.* at ¶ 29); Defendant HRHH "knew or should have known that BERNIE [sic] MANCINO was prejudiced against African Americans," (*Id.*); Defendant Mancino "terminated another black employee in a situation where he has not terminated a Caucasian employee," (*Id.* at ¶¶ 15, 29); Defendant Mancino discriminated against Plaintiff, (*Id.* at ¶ 19); Defendant HRHH "expressly authorized the termination of Plaintiff based upon the decision of Bernie [sic] Mancino," (*Id.* at ¶ 30); and Defendant Mancino's discriminatory actions caused injury to Plaintiff, (*Id.* at ¶ 20).  Taking these allegations as true and construing them liberally in Plaintiff's favor, they reflect the same core of operative facts underlying the NHTS claim in the FAC. *See* (FAC ¶¶ 9-16, 18, 22, 26, 48-52).  Thus, the facts pled in the original Complaint sufficiently put Defendant HRHH on notice that it is alleged to have known that its employee— Defendant Mancino—was racially biased, that he acted on this bias in the past, and that

Defendant HRHH's failure to prevent him from acting on it again caused Plaintiff to be injured.

### b.    Same Kind of Evidence

The Court is not convinced that new types of evidence would be required to prove the defamation or NHTS claims.  The claims set forth in the original Complaint rely upon the same questions of fact as Plaintiff's defamation and NHTS claims, namely Defendant Mancino's alleged racial bias and the existence and violation of Rule #6.  Because the defamation and NHTS claims will likely be proved by the same kind of evidence that would be offered in support of the factual allegations in the original Complaint, and because the added claims share a common core of operative facts with the claims set forth in the original Complaint, the Court finds that the defamation and NHTS claims arise out of conduct, transactions, or occurrences set out in the original Complaint.

> So long as a party is notified of litigation concerning a particular transaction or occurrence, that party has been given all the notice that Rule 15(c) requires. When a defendant is so notified, 'the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement.'

*ASARCO, LLC*, 765 F.3d at 1006 (quoting, *Martell v. Trilogy Ltd.*, 872 F.2d 322, 326 (9th Cir. 1989)).  Accordingly, the Court finds that the defamation and NHTS claims relate back to the date the original Complaint was filed and are not barred by the statute of limitations.

### 2.    Alternative Arguments as to the Defamation Claim

Defendant HRHH alternatively argues that the defamation claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted. (Mot. to Dism. 17: 21-18:13).  Specifically, Defendant HRHH contends the "FAC does not allege that the purportedly false and defamatory statements were unprivileged communications." (Mot. to Dism. 18:5-7).  However, Defendant HRHH overlooks

the fact that the FAC specifically asserts that Defendant HRHH's alleged false and defamatory statements were unprivileged communications, (FAC ¶ 58).  Furthermore, "the burden of alleging and proving the privilege [is] on the defendant corporation, not the plaintiff." *Hardy v. Global Options Servs., Inc.*, No. 2:13-CV-00514-GMN-CWH, 2013 WL 6059154, at *3 (D. Nev. Nov. 14, 2013) (quoting *Simpson v. Mars Inc.*, 929 P.2d 966, 968 (Nev. 1997)).

Defendant HRHH also argues that the defamation claim should be dismissed because it is not supported by sufficiently specific factual allegations to meet the standards set forth in *Iqbal* and *Twombly*. (Mot. to Dism. 3:11-15).  Plaintiff disagrees, stating that "at this stage it is not incumbent upon the Plaintiff to know and to allege all of the particulars of the communication." (*Id.* at 20:2-3).  While that may be true, Plaintiff still must allege facts giving rise to a plausible inference that Defendant HRHH committed the alleged defamatory acts. Because "Plaintiff fails to identify the persons that made the allegedly defamatory statements, who the statements were published to, and when the statements were made," the court is not able to reasonably infer that Defendant HRHH has defamed Plaintiff. *See Blanck v. Hager*, 360 F. Supp. 2d 1137, 1160 (D. Nev. 2005), *aff'd*, 220 Fed. App'x. 697 (9th Cir. 2007). Accordingly, the defamation claim will be dismissed.

### 3.   Alternative Arguments as to the NHTS Claim

Defendant HRHH also asks the Court to dismiss the NHTS claim, arguing that the Nevada Supreme Court would not recognize the claim because: (1) it is a common law tort 'entirely based on [] allegations of unlawful discrimination," (Mot. to Dism. 16:20-23); and (2) Plaintiff fails to allege that he was physically harmed or under the threat of physical harm, (*Id.* at 15:27–16:19).  Although the Nevada Supreme Court does not provide conclusive authority on either point, numerous courts in this district have previously held that NHTS claims may arise out of workplace discrimination and do not require an allegation that a plaintiff suffered physical harm. *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028 n.4 (D. Nev. 2013)

("The Nevada Supreme Court has not yet addressed the physical harm requirement, and in the absence of conclusive authority, the court will not graft a physical injury requirement onto the tort of negligent supervision." (internal quotations omitted)); *Thoan v. Victoria Partners*, No. 2:09-CV-0073-JCM-GWF, 2010 WL 2570714, at *1 (D. Nev. June 24, 2010) (denying summary judgment against a negligent supervision claim based on workplace discrimination in which no physical harm was alleged); *Lambey v. Nevada ex rel. Dep't of Health & Human Servs.*, No. 2:07-CV-1268-RLH-PAL, 2008 WL 2704191, at *4 (D. Nev. July 3, 2008) (declining to dismiss a negligent supervision claim based on workplace sexual harassment with no allegations of physical injury).  Accordingly, the Court will deny the Motion to Dismiss as to the NHTS claim.

### C.     Leave to Amend

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Fed. Rule Civ. P. 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court finds that the deficiencies of Plaintiff's state law discrimination, color discrimination and racial harassment claims cannot be cured by amendment, but that amendment of Plaintiff's defamation claim would not be futile.  Accordingly, Plaintiff's state law discrimination, color discrimination and racial harassment claims are dismissed with prejudice, and Plaintiff's defamation claim is dismissed without prejudice as to Defendant HRHH.

1

## IV.   <u>CONCLUSION</u>

2

     **IT IS HEREBY ORDERED** that Defendant HRHH's Partial Motion to Dismiss (ECF

3

No. 33) is **GRANTED in part** and **DENIED in part** in accordance with this Order.

4

     **IT IS FURTHER ORDERED** that Plaintiff shall have until April 30, 2015, to file a

5

second amended complaint if he so chooses.  Failure to file by this deadline will result in

6

dismissal of Plaintiff's defamation claim with prejudice.

7

     **DATED** this 14th day of April, 2015.

8

9

                      _____

10

                      Gloria M. Navarro, Chief Judge
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25