# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LEON RICHARDSON,<br><br>        Plaintiff,<br><br>    vs.<br><br>HRHH GAMING SENIOR MEZZ, LLC, a Delaware Limited Liability Company;<br>BENNIE MANCINO, an individual,<br><br>        Defendants. | Case No.: 2:13-cv-1913-GMN-CWH<br><br>**ORDER** |

Presently before the Court is the Motion for Summary Judgment, (ECF No. 75), filed by Defendant HRHH Gaming Senior Mezz, LLC ("Defendant HRHH"). Plaintiff Leon Richardson ("Plaintiff") filed a response in opposition, (ECF No. 117), and Defendant HRHH replied, (ECF No. 101).

Also before the Court is the Motion for Summary Judgment, (ECF No. 79), filed by Defendant Bennie Mancino ("Defendant Mancino"). Plaintiff filed a response in opposition, (ECF No. 118), and Defendant Mancino replied, (ECF No. 100).

For the reasons set forth herein, the Motions will be granted, and the Court will enter summary judgment in favor of Defendants as to all of Plaintiff's claims.[1]

## I. BACKGROUND

This case arises out of allegations of racial discrimination and harassment that occurred during Plaintiff's employment with Defendant HRHH. Plaintiff is an African American man,

---

[1] Defendant HRHH also filed a Motion to File Additional Exhibits Under Seal. (ECF No. 77). However, consideration of the proposed exhibits was not necessary to reach the instant disposition, so Defendant HRHH's Motion will be DENIED as moot.

(Sec. Am. Compl. ¶ 4, ECF No. 52), who was employed by Defendant HRHH as a floor manager for table games from January 2005 until his termination in April 2012. (*Id.* ¶ 9).

Prior to his termination, Defendant HRHH disciplined Plaintiff on four separate occasions for violations of its policies and procedures. On June 3, 2010, Plaintiff was issued a verbal warning after he made a $1,000 payout without contacting his manager or gathering information necessary to complete required tax documentation. (June 3, 2010 Corrective Counseling Form, Ex. A-4 to HRHH's MSJ, ECF No. 75). On December 12, 2010, Plaintiff was issued a written warning for failing to document the play of a customer who bet an average of $500 while playing at a gaming table for over an hour. (December 12, 2010 Corrective Counseling Notice, Ex. A-5 to HRHH's MSJ, ECF No. 75). On December 23, 2010, Plaintiff was issued another written warning for engaging in excessive conversation and neglecting to provide sufficient protection for table games under his supervision. (December 13, 2010 Corrective Counseling Notice, Ex. A-6 to HRHH's MSJ, ECF No. 75). On March 31, 2011, Plaintiff was issued a final written warning for allowing a player to buy in for $1,000 without verifying his prior buy-ins for the day, resulting in a failure to obtain required tax documentation. (Final Warning, Ex. A-9 to HRHH's MSJ, ECF No. 75). On April 3, 2012, Plaintiff was terminated following an incident in which Defendants claim that Plaintiff failed to report to his manager that a player in his section had bought in for $8,000. (April 3, 2012 Corrective Counseling Notice, Ex. A-12 to HRHH's MSJ, ECF No. 75); (Mar. 29, 2012 Mancino Email, Ex. A-10 to HRHH's MSJ, ECF No. 75).

During his deposition, Plaintiff offered testimony regarding two alleged incidents of racial insensitivity involving other HRHH employees. The first of these took place at an employee briefing in 2007 or 2008, when Defendant Mancino, Plaintiff's direct supervisor, was discussing the conduct of several "pretty bad customers" with a senior vice president. (Pl.'s Depo. 207:11-18, Ex. B to HRHH's MSJ, ECF No. 75). Plaintiff claims that during this

meeting, Defendant Mancino told the senior vice president that those customers "call us everything under the sun," and that one particular customer called Defendant Mancino "everything under the sun except a white man." (*Id.* at 207:17-23).  The second incident involved a verbal exchange that took place between Plaintiff and another HRHH employee, Rod Green, at a Christmas party in 2011. (*Id.* at 236:1-10).  During the event, Mr. Green allegedly said to Plaintiff, "What do a black man and Christmas have in common, a Christmas tree? . . . Well, they both got colored balls." (*Id.* at 236:1-10).

Plaintiff's Second Amended Complaint sets forth six causes of action: (1) race discrimination in violation of Title VII, against Defendant HRHH; (2) race discrimination in violation of 42 U.S.C. § 1981, against Defendant HRHH; (3) hostile work environment in violation of 42 U.S.C. § 1981, against Defendant HRHH; (4) negligent hiring, training and supervision, against Defendant HRHH; (5) defamation, against both Defendants; and (6) intentional interference with prospective economic advantage, against Defendant Mancino. (Sec. Amend. Compl. ¶¶ 25-75).

In their Motions, Defendants each argue that summary judgment be entered in their favor as to all of the claims against them.

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid

summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249-50.

### III.   ANALYSIS

In assessing the instant Motions, the Court will address each of Plaintiff's claims in turn.

#### A.   Title VII and § 1981 Discrimination Claims

The Court analyzes discrimination claims arising under Title VII and § 1981 within the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008). "Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). "Establishing a prima facie Title VII case in response to a motion for summary judgment requires only minimal proof and does not even need to rise to the level of a preponderance of the evidence." *Palmer v. Pioneer Assocs., Ltd.*, 338 F.3d 981, 984 (9th Cir. 2003).

To establish a prima facie case of employment discrimination under Title VII or § 1981, a plaintiff must present evidence showing: (1) he is a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he suffered an adverse employment action; and (4) that similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of

discrimination. *See, e.g.*, *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011); *Surrell*, 518 F.3d at 1105-06.

If a plaintiff establishes a prima facie case, "the burden of production, not of persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155. "If [the] defendant meets this burden, [the plaintiff] must then raise a triable issue of material fact as to whether the defendant's proffered reasons for [the termination] are mere pretext for unlawful discrimination." *Id.*

In the instant case, Plaintiff has failed to establish a prima facie case of discrimination under Title VII and § 1981. Though it is apparent that, as an African American man, Plaintiff is a member of a protected class, and also that his termination constitutes an adverse employment action, Plaintiff has failed to provide sufficient evidence demonstrating that he was performing his job in a satisfactory manner or that he was treated less favorably than similarly situated individuals outside of his protected class.

Indeed, the Ninth Circuit has held that "a plaintiff who violates company policy and fails to improve his performance despite a warning has not demonstrated satisfactory performance." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1208 (9th Cir. 2008) (quoting *Mungro v. Giant Food, Inc.*, 187 F. Supp. 2d 518, 522 (D. Md. 2002)); *see also Johnson v. W. Hotel & Casino*, No. 2:10-cv-1590-PMP, 2011 WL 4963039, at *5 (D. Nev. Oct. 19, 2011) (stating that, though "courts do not require a flawless personnel file at all times during employment, . . . a plaintiff who openly violates company policy and continues to do so, despite a warning, cannot demonstrate satisfactory performance.").

In this case, while Plaintiff denies that he violated HRHH's policies during the incident which directly preceded his termination, he does not presently dispute the four prior policy violations that occurred between June 3, 2010 and March 31, 2011, three of which involved similar accusations of failing to properly verify or record a player's activity. Therefore, even

disregarding the final policy violation, the four previous policy violations that are not presently disputed by Plaintiff show that he was not performing his job in a satisfactory manner.

Furthermore, Plaintiff has also failed to provide sufficient evidence demonstrating that similarly situated employees outside his protected class were treated more favorably. During his deposition, Plaintiff claimed that he was aware of a Caucasian floor manager, David Koelling, who committed a similar policy violation and was not terminated. (Pl.'s Depo. 224:4-227:9-233:1, Ex. B to HRHH's MSJ, ECF No. 75). However, Mr. Koelling had only two documented violations of Defendant HRHH's policies, which resulted in the issuance of an initial warning in December 2008 and a final warning in May 2009. (Flieger Decl. ¶¶ 17-18, Ex. A to HRHH's MSJ, ECF No. 75). Because Plaintiff was disciplined four times prior to his termination and Mr. Koelling was disciplined only twice, for similar policy violations, it is apparent that Mr. Koelling was not treated more favorably than Plaintiff. Accordingly, the Court finds that Plaintiff has failed to establish that similarly situated employees outside of his protected class were treated more favorably.[2]

Therefore, as Plaintiff has failed to provide sufficient evidence to support a prima facie case of discrimination arising under Title VII or § 1981, the Court finds that summary judgment is warranted in Defendant HRHH's favor as to these claims.

**B. Section 1981 Hostile Work Environment Claim**

To support a hostile work environment claim under § 1981, a plaintiff must show that "(1) he was subjected to verbal or physical conduct because of his race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of

---

[2] Plaintiff also claims that he sought to be promoted to the position of pit manager in 2009 or 2010, but HRHH chose to promote two Caucasian employees instead. However, Plaintiff has not provided any evidence demonstrating that he possessed comparable qualifications to the individuals who were promoted, and thus Plaintiff has failed to demonstrate that they were similarly situated employees. *See Tempesta v. Motorola, Inc.*, 92 F. Supp. 2d 973, 980 (D. Ariz. 1999) (holding that a plaintiff failed to present a prima facie case of Title VII gender discrimination, in part, because he failed to offer admissible evidence regarding the education and qualifications of individuals selected for promotions).

his employment and create an abusive work environment." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). In determining whether conduct was severe or pervasive, courts look to "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* Additionally, it is necessary to consider that § 1981 is not a "general civility code." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id*.

In this case, Plaintiff argues that two statements made by HRHH employees during the course of his employment created a hostile work environment. Specifically, Plaintiff refers to Defendant Mancino's statement in 2007 or 2008 that a "bad customer" had called Defendant Mancino "everything under the sun except a white man," and Mr. Green's statement at a Christmas party in 2011, "What do a black man and Christmas have in common, a Christmas tree? . . . Well, they both got colored balls." (Pl.'s Depo. 207:17-23, 236:1-10, Ex. B to HRHH's MSJ, ECF No. 75).

However, these two statements, which were made several years apart, do not give rise to a hostile work environment claim. It is well established that occasional comments of a racially insensitive nature cannot, by themselves, create the type of abusive work environment addressed by § 1981. *See, e.g.*, *Manatt*, 339 F.3d at 798 (holding that two racially insensitive statements directed at the plaintiff which were made two and a half years apart did not give rise to a hostile work environment claim); *Jordan v. Clark*, 847 F.2d 1368, 1375 (9th Cir. 1988) (finding no hostile work environment where "off-color" jokes were told in workplace). Because Plaintiff does not provide any additional evidence to support the contention that he was subjected to severe or pervasive conduct which would create an abusive work

environment, the Court will grant Defendant HRHH's Motion for Summary Judgment as to this claim.

### C. Negligent Hiring, Training, and Supervision Claim

Plaintiff asserts a cause of action for the common law tort of negligent hiring, training, and supervision. However, this Court and the Supreme Court of Nevada have held that Nevada Revised Statutes Section 613.330 "provides the exclusive remedy" under Nevada law "for tort claims premised on illegal employment practices." *Jackson v. Universal Health Servs., Inc.*, No. 2:13-cv-1666-GMN-NJK, 2014 WL 4635873, at *3 (D. Nev. Sept. 15, 2014); *see also Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989) ("the Legislature has addressed the gravity of violating Nevada's public policy against age discrimination by defining the extent of the remedy available to parties injured by such discrimination."); *D'Angelo v. Gardner*, 819 P.2d 206, 217 n.10 (Nev. 1991) ("no additional court-created remedies . . . arise out of age-based wrongful discharge for which tort recovery is available by statute.").

In this case, Plaintiff's claim for negligent hiring, training, and supervision is based on the same alleged illegal employment practices underlying his discrimination claims. *See* (Pl.'s Resp. to HRHH's MSJ 4:16-17, ECF No. 117) ("[Defendant HRHH] had a clear policy of either intentional lack of racial tolerance or negligent enforcement of its own policies. . . . [Defendant HRHH] has not shown that it met with any of the management team to ascertain if diversity issues, prejudice, or outright hatred of blacks was the root cause of the problem."). Pursuant to Section 613.330 of the Nevada Revised Statutes, "it is an unlawful employment practice for an employer . . . to discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of his or her race or color . . . ." Therefore, Plaintiff's claims of racial discrimination are "clearly intended to be remedied by the statutory framework" of Section 613.330, and do not give rise to separate common law tort claims. *See Painter v. Atwood*, 912 F. Supp. 2d 962, 964-65 (D. Nev. 2012)

(noting that Section 613.330 provides the exclusive remedy under Nevada law for claims against employers of enumerated unlawful behavior, such as race or age discrimination). Accordingly, the Court will grant Defendant HRHH's Motion for Summary Judgment as to Plaintiff's negligent hiring, training, and supervision claim.

### D. Defamation Claim

"A defamation claim requires demonstrating (1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005). In opposing a claim for defamation, the defendant bears the burden of proving that a publication is privileged. *Id.* at 284. Privileged communications include intra-corporate communications that occur "in the regular course of the corporation's business." *Simpson v. Mars*, 929 P.2d 966, 968 (Nev. 1997).

"Whether a particular communication is conditionally privileged by being published on a 'privileged occasion' is a question of law for the court." *Circus Circus Hotels, Inc. v. Witherspoon*, 657 P.2d 101, 105 (Nev. 1983). After a defendant has shown that a publication is privileged, a plaintiff can defeat the privilege by proving that "the defendant abused the privilege by publishing the communication with malice in fact." *Id.* The privilege may also be abused "by publication in bad faith, with spite or ill will or some other wrongful motivation toward the plaintiff, and without belief in the statement's probable truth." *Id.* at 105 n.2.

In the instant case, Plaintiff argues that Defendant Mancino made a false and defamatory statement when he emailed his immediate supervisor and a human resources representative on March 29, 2012, about the incident which resulted in Plaintiff's termination. This email stated,

> Attached are documents for Leon Richardson SPI. Leon failed to notify a manager after a player had bought in excess of $3000 on 3.26.12 . . . Surveillance review show [sic] he had ample opportunity to either personally inform a manager that walked near the pit 4 minutes after the buy-in or make a phone call to a manger

> neither happened. He made only 1 call to surveillance and that was after the patron had made 3 consecutive buy-ins of $1000. The player then left and came back shortly thereafter and bought in $5000 in one shot with no notification to surveillance or a manager. A call to a manager is required as verbalized above. I have included all relevant documents and statement except the surveillance report.
>
> Please let me know the resolution for this employee when available.

(Mar. 29, 2012 Mancino Email, ECF No. 118-4).

The substance of Defendant Mancino's email makes clear that it qualifies as a routine, intra-corporate communication. The email was sent only to fellow employees of HRHH, and the email's content related only to Plaintiff's conduct while at work. Courts in this district have recognized that internal correspondences regarding employee conduct directed at management or human resources personnel qualify as routine, intra-corporate communications and are therefore privileged. *See Cummings v. Valley Health Sys., LLC*, No. 2:13-cv-0479-APG-GWF, 2016 WL 590455, at *7 (D. Nev. Feb. 11, 2016); *Hoff v. Walco Int'l, Inc.*, No. 3:11-cv-0623-LRH-WGC, 2013 WL 275298, at *2 (D. Nev. Jan. 23, 2013). Thus, Defendant Mancino's email qualifies as a privileged communication. *Simpson v. Mars*, 929 P.2d at 968.

Additionally, the record does not support Plaintiff's argument that Defendant Mancino acted in bad faith. Though Plaintiff argues that Defendant Mancino acted with a "racially based motive to rid the Hard Rock management of African Americans[,]" (Pl.'s Resp. to Mancino's MSJ 5:3-4, ECF No. 118), Plaintiff has failed to provide evidence to support this contention. Accordingly, Plaintiff's defamation claim fails as a matter of law, and the Court will grant Defendants' Motions for Summary Judgment as to this claim.[3]

---

[3] As Plaintiff has failed to provide sufficient evidence to support his defamation claim against Defendant Mancino, his defamation claim against Defendant HRHH, which is asserted under the theory of respondeat superior, also fails as a matter of law.

**E. Intentional Interference with Prospective Economic Advantage Claim**

Under Nevada law, a claim for intentional interference with prospective economic advantage requires:

> (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct.

*Leavitt v. Leisure Sports Incorporation*, 734 P.2d 1221, 1225 (Nev. 1987). Similar to a claim for defamation, privileged communications "cannot be used to prove an interference with a prospective business relation claim unless the privilege is abused by bad faith, malice with spite, ill will, or some other wrongful motivation, and without belief in the statement's probable truth." *Bank of Am. Nev. v. Bourdeau*, 982 P.2d 474, 476 (Nev. 1999).

In support of this claim, Plaintiff argues that Defendant Mancino's March 29, 2012 email was a calculated and dishonest attempt to end Plaintiff's employment with Defendant HRHH because of his race. However, as discussed *supra*, Defendant Mancino has established that his email was a routine, intra-corporate communication, and thus qualifies as privileged. Furthermore, Plaintiff has presented no evidence which would allow a reasonable jury to conclude that Defendant Mancino acted with malice, or that he did not believe the statements in his email were true. Accordingly, Defendant Mancino's Motion for Summary Judgment will be granted as to this claim.

**IV. <u>CONCLUSION</u>**

**IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment, (ECF Nos. 75, 79), are **GRANTED**.

///

///

**IT IS FURTHER ORDERED** that Defendant HRHH's Motion for Leave to File Under Seal, (ECF No. 77), and Plaintiff's Counter Motion to Deny Seal, (ECF No. 84), are **DENIED as moot**. The Clerk is instructed to enter judgment accordingly and close the case.

**DATED** this __28__ day of June, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Court